(No. 19606.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PETER ZUKAS, Plaintiff in Error.

*Opinion filed October 19, 1929—Rehearing denied Dec. 10, 1929.*

GEORGE F. BARRETT, and CHARLES V. BARRETT, (WILLIAM C. WERMUTH, and EDWARD L. HOYER, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JOEL C. FITCH, (EDWARD E. WILSON, and JOHN HOLMAN, of counsel,) for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Peter Zukas was convicted in the criminal court of Cook county of the manslaughter of John Dembowski. Motions for a new trial and in arrest of judgment were denied. Judgment was rendered on the verdict and Zukas was sentenced to the penitentiary. He prosecutes this writ of error for a review of the record.

On Sunday, February 5, 1928, at about ten o'clock P. M., John Dembowski, Bessie Dembowski, his wife, and Chester Dembowski, their infant son, and Edward Kozlowski and Walter Kozlowski, nephews of Bessie Dembowski, alighted from the rear platform of an east-bound street car at the southwest corner of Blue Island avenue and Leavitt street, in the city of Chicago. An automobile stood waiting to the rear of the street car while the latter discharged its passengers. A second automobile, driven by Zukas, passed to the right of the first and struck the persons who had just alighted from the street car. Chester Dembowski and Walter Kozlowski were killed. Bessie Dembowski and Edward Kozlowski were injured and both were taken to a hospital where the former remained six weeks and the latter three days. John Dembowski received injuries from which he died within three days.

At the time the accident occurred, Joseph Zmuda and George Vana were going east on Blue Island avenue in an automobile at a point about half a block west of Leavitt street. Zmuda saw Zukas' car driven at such speed that, to avoid a collision with the automobile ahead, Zukas turned to the right and Zmuda next discovered persons lying in the street. Zukas did not stop his car, but drove to his garage in the vicinity. Zmuda followed him and attempted to engage him in conversation at the garage, but Zukas refused to speak. The odor of liquor was detected on his breath. Vana saw several persons lying in the street immediately after the accident. When he asked Zukas, at

the latter's garage, whether he knew what had happened, Zukas answered he did not know. Vana saw him shortly thereafter at the police station. At that time he did not appear to be able to walk straight.

Joseph Cikanek, a police officer, was notified of the accident by Zmuda and Vana. He had been acquainted with Zukas about eleven years, and went to his garage. He found Zukas there, and the latter accompanied the officer to the police station. The officer asked Zukas what had happened at Leavitt street and his answer was that he did not know. Zukas seemed to be dazed, his face was flushed, his eyes were bloodshot and his breath smelled of liquor.

Lieutenant William P. O'Brien asked Zukas at the police station whether in driving his automobile he struck any person at Leavitt street, and he answered that he knew nothing about it. When the officer inquired whether he had been drinking, he replied that he had two drinks of schnapps and two glasses of beer.

Dr. Charles A. Janda examined Zukas shortly after the accident occurred. His pulse beats were one hundred six per minute or thirty-four in excess of the normal rate, and his throat was congested. The condition of his throat was caused by drinking liquor. Both Lieutenant O'Brien and Dr. Janda found that Zukas' eyes were bloodshot; that his breath carried the odor of alcohol, and that his walk was unsteady. Both were of the opinion that Zukas was under the influence of liquor at the time.

Charles J. Touzinsky, a police officer, took a written statement from Zukas at the police station. In this statement Zukas set forth that on the evening in question he had two drinks of schnapps and two glasses of beer; that he drove his automobile east on Blue Island avenue at the rate of fifteen or twenty miles an hour; that as he approached Leavitt street he overtook a street car but saw no person about it; that he passed to the right of the car and then discovered people in the street; that he became ex-

cited, his wife started to cry and his car struck certain persons, and that he did not stop but continued on his way home to the garage from which a police officer took him to the police station. A post mortem examination of Dembowski's body was made by Dr. N. Badzmierowski, a coroner's physician. The examination disclosed external and internal injuries, from which, in the doctor's opinion, death ensued.

Zukas testified that he was sixty years of age and a grocer and butcher; that, driving his automobile, accompanied by his wife, he stopped, on the evening of February 5, 1928, at the home of one Ivanauskas, a debtor, to collect a claim; that he found Ivanauskas in poor circumstances, returned to his store and brought to Ivanauskas some bread, meat and a gallon of home made beer; that he and his wife had supper at Ivanauskas' home; that he had a cold and Mrs. Ivanauskas prepared a remedy consisting of honey, ginger and herbs, for him; that he also drank two glasses of beer; that he and his wife left about nine o'clock and drove at the rate of fifteen or twenty miles an hour; that when they reached the intersection of Blue Island avenue and Leavitt street, driving in an easterly direction, he turned to pass an automobile and his wife cried out that there were people in the street; that he attempted to put his foot on the brake but that his foot slipped and it struck the accelerator; that the automobile moved forward at increased speed and struck certain persons who commenced to scream; that he became excited, a severe pain seized him about the heart, and he proceeded to his home without knowing what had occurred; that he was arrested soon after reaching his garage, and that subsequently, in November of the same year, he went to a hospital and was treated there four weeks for heart trouble.

Anasthasia Ivanauskas corroborated Zukas' testimony with respect to what occurred in her home on the evening of February 5, 1928, except that she said he drank a glass

of honey and one glass of beer. Charles Praidis, who called at Ivanauskas' home while Zukas and his wife were there, saw Zukas drink one glass of beer. He had been acquainted with Zukas for seventeen years and neither he nor Mildred Zukonis, Zukas' daughter, had ever seen him intoxicated. Several witnesses testified that Zukas' general reputation for sobriety, peaceableness and law-observance in the neighborhood of his residence was good.

Dr. C. C. Gibson treated Zukas on February 5 and 6, 1928. He found him suffering from extreme nervousness and inability to sleep. His blood pressure was high and his heart was enlarged. Zukas told the doctor he had suffered from pain over the heart, in the left shoulder and down the left arm for a number of years. The doctor's diagnosis was that Zukas suffered from angina pectoris, high blood pressure, arteriosclerosis and mitral regurgitation; that his condition was chronic and that it had existed from five to twenty years. Dr. Gibson further testified that attacks of angina pectoris are precipitated by anger or excitement, and that in this condition the patient's countenance becomes flushed, there is a rigidity of the muscles of the body and he is obsessed with a sense of impending death in which everything is forgotten save his pain and misery. On cross-examination, Dr. Gibson admitted that a heightened color of the face and bloodshot eyes might result from the excessive use of intoxicating liquors.

Dr. Benedict F. Shanahan treated Zukas for embolism of the lung in November, 1928. At that time he had high blood pressure, a dilated heart and hardening of the arteries, conditions which had existed for a number of years. Among his symptoms were sudden and acute pain, loss of memory and brain function and fainting spells.

The substance of the evidence in the case is set forth in the foregoing statement. The contentions which the plaintiff in error makes for a reversal of the judgment relate to the proof of venue, the admission of evidence, the

modification of an instruction and the refusal to give certain other instructions, the summary disposition of the motions for a new trial and in arrest of judgment, and the sufficiency of the evidence to establish the guilt of the plaintiff in error.

Plaintiff in error contends that the venue was not proved. Joseph Zmuda and George Vana, who followed the· plaintiff in error, testified that his automobile struck persons at Blue Island avenue and Leavitt street. Vana added that it occurred in Chicago. Bessie Dembowski testified that her husband was killed at the intersection of the same streets, in the city of Chicago, Cook county, Illinois. Other facts and circumstances shown lead to the same conclusion. No reasonable doubt arises upon the evidence that the act charged was committed at the place laid in the indictment, and the venue was clearly established. *People* v. *Golub,* 333 Ill. 554; *People* v. *Talbe,* 321 id. 80; *People* v. *Ortiz,* 320 id. 205.

Complaint is made of a hypothetical question asked Dr. Gibson by the prosecution on cross-examination. The question embodied the assumption that a person, driving an automobile under the conditions shown by the evidence, suddenly suffered an attack of angina pectoris, and the inquiry was, what his natural reaction would be? The doctor answered that, in his judgment, the person's mind would be deflected from the driving of his car to his pain and suffering; that he would lose the power to manage his car and that he might fall in a faint. There was no objection to the question as finally modified and propounded; no exception was taken to the answer and the propriety of the question is not preserved for review. Moreover, the answer was consistent with the doctor's testimony on direct examination, and it was not prejudicial to the plaintiff in error.

Plaintiff in error further complains of the modification of an instruction defining manslaughter, both voluntary and

involuntary. The court struck out the definition of voluntary manslaughter, and rightly so, for that offense was neither charged nor supported by evidence. The charge was involuntary manslaughter, and the instruction, as modified, was made applicable to the case and its definition of involuntary manslaughter was correct.

The contention is made that the trial court erred in refusing to give the fifth and sixth instructions requested by the plaintiff in error. The fifth refused instruction read as follows: "The court instructs the jury that the action of this defendant in proceeding on from the scene of the alleged homicide may or may not be considered as a circumstance tending to prove guilt, depending on the motive which prompted it, whether a consciousness of guilt and a pending apprehension of being brought to justice caused the flight, or whether it was caused from some other and more innocent motive; and the jury may look to all the facts and circumstances which have been proved by all the competent evidence herein to determine his motive in so doing. And if, from a consideration of all the competent evidence in this case, the jury believe that such action was prompted by other and innocent motives, you should not regard this said action of this defendant as indicative of guilt." The evidence adduced by the plaintiff in error was to the effect that after his automobile struck the persons in the street, he suffered an attack of angina pectoris which deprived him of the use of his mental faculties and that, in consequence, he proceeded to his home without knowing what had occurred. In such a situation, the plaintiff in error could exercise no choice between different courses of action, for, being unconscious, the course pursued would be uninfluenced by his will, and no motive, innocent or guilty, could prompt it. The instruction had no basis in the evidence and was properly refused.

By the sixth refused instruction the court was asked to inform the jury that the opinion of the prosecuting attor-

neys that the plaintiff in error was guilty should not be considered by them. It does not appear that the attorneys for the prosecution, at any time during the course of the trial, including the closing argument to the jury, expressed any personal opinion concerning the guilt or innocence of the plaintiff in error. The record fails to disclose an objection that the prosecuting attorneys transcended the limits of legitimate argument. It follows that the court's refusal to give the sixth instruction was justified.

On the day the jury's verdict was returned, counsel for the plaintiff in error made motions for a new trial and in arrest of judgment. Both motions were promptly denied, and judgment was rendered on the verdict. It is now urged that counsel should have been given an opportunity to present their reasons in support of these motions. No such application was addressed to the trial court, and it has not been made to appear wherein the prompt disposition of these motions was prejudicial to the plaintiff in error. Unless there is reversible error in other respects or the verdict is not warranted by the evidence, this court will not disturb a verdict and judgment upon the sole ground that the motions for a new trial and in arrest of judgment were acted upon immediately after they were made. *People* v. *Marx, 291* Ill. 40.

It is argued that the evidence fails to show that the automobile driven by the plaintiff in error struck Dembowski and that he died as the result of the injuries so received. Dembowski alighted from the street car with his wife and child and other persons. Plaintiff in error in his written statement made at the police station admitted that after turning to the right to pass the automobile which followed the street car he struck the people in the street. His testimony on the trial was to the same effect. The witness Zmuda following in the same direction a short distance behind the plaintiff in error saw him drive his car at such a rate of speed that he, the plaintiff in error, was compelled

to turn to the right to avoid a collision with the automobile ahead. Immediately thereafter Zmuda and Vana found persons dead and injured in the street. Dembowski was among the injured and died as the result of his injuries. Zmuda and Vana followed the plaintiff in error to his garage and discovered that he had been drinking intoxicating liquor. These and other facts shown by the evidence convinced the jury beyond a reasonable doubt that the plaintiff in error, while under the influence of liquor, drove his automobile so recklessly and wantonly past a street car discharging its passengers that he struck Dembowski as charged in the indictment. It was the jury's province to determine the facts and the verdict is amply sustained by the evidence.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*