(No. 30483.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARTHUR R. WILSON, Plaintiff in Error.

*Opinion filed September 24, 1948.*

CHARLES A. BELLOWS, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (JOHN T. GALLAGHER, ALEXANDER J. NAPOLI, MELVIN S. REMBE, and W. S. MIROSLAWSKI, all of Chicago, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

An indictment was returned in the criminal court of Cook County at the December term, A.D. 1946, against plaintiff in error, Arthur R. Wilson, charging him with the unlawful use of high explosives with intent to do bodily harm. He was tried before a jury, found guilty, and his punishment fixed at ten years in the Illinois State Penitentiary. Motions for a new trial and in arrest of judgment being overruled, he was sentenced in accordance with the verdict.

Plaintiff in error contends that (1) the trial court permitted erroneous and incompetent evidence to be introduced; (2) the jury was allowed to separate to the prejudice of plaintiff in error; (3) prejudicial remarks were made by the State's Attorney and trial court; (4) counsel was not given an opportunity to argue a motion for a new trial; and (5) the defendant was not proved guilty beyond all reasonable doubt.

The record discloses that the prosecutrix, Hertha Wilson, a grade-school teacher in the Chicago public schools for more than 23 years, married the defendant in 1924

and was awarded a decree of divorce from him in January, 1944; that at the time of the occurrence she was living at 346 E. 108th Street, Chicago, with her daughter; that on September 25, 1946, she left her home to go to the Van Vlissengen School, located at 137 W. 108th Place, at about 8:25 A.M.; that she entered her automobile which was parked facing west on the south side of the street across from the building in which she lived. She testified that after getting into the automobile she stepped on the starter and proceeded west on said street, and when she slowed down for the first cross street, which is Calumet, a terrific explosion occurred in the car causing the car to get out of control; that the car went across the curb into a prairie, and after avoiding hitting a lamppost, she finally got the car back into the street where it stopped approximately a block and a half after the explosion; that the glass in the windows of the automobile was shattered, part of the hood was missing, part of the runningboard was torn off, the top of the transmission was shattered and torn and other parts of the automobile were strewn about the scene of the explosion. Windows in a building at the corner of Calumet Avenue were also broken. Prosecutrix received serious injuries and was removed to the Roseland Community Hospital.

The evidence discloses that during their married life, and after their separation, there was much quarreling between the parties and threats as far back as 1941, which finally led to a divorce. Considerable circumstantial evidence was offered which tended to prove defendant's connection with the crime, but no direct evidence was offered to show that defendant committed the offense charged in the indictment.

In the trial of the case the prosecution was permitted to introduce evidence disclosing many circumstances pertaining to domestic difficulties occurring a number of years before the accident, which did not afford too much probative

value in proving the crime as charged. Evidence of particular events in the parties' married life was permitted over objection to go to the jury, such testimony showing occurrences prior to the divorce. Also, proof was permitted to be shown by the prosecution that 17 years prior to the date of the indictment the defendant used explosives. While it is true some of this testimony might have been proper under certain circumstances, we do not think it proper to go to the extent of presenting evidence which discloses collateral facts which' are remote and incapable of affording any reasonable presumption or inference as to the principal matter in dispute. It is true it is sometimes difficult to draw the line as to just when collateral facts afford sufficient inference as to the issues in dispute in order to be admissible, and when such collateral facts tend to divert the minds of the jurors from the point in issue and arouse their prejudice. Especially is this true where the case is entirely circumstantial, and where too much latitude is permitted pertaining to testimony which is remote it is likely to arouse passion and prejudice. Without burdening the record with all of the details we are of the opinion the prosecution was given too much latitude in the examination of witnesses pertaining to events which occurred during the parties' married life and a number of years before the alleged offense.

We hardly see how testimony that plaintiff in error quarreled with prosecutrix in 1942 because she visited her sick father and mother, or that prosecutrix's testimony that she saw her husband using explosives on his farm in 1929, seventeen years prior to the date of the crime alleged in the indictment, or that in 1943 the defendant jumped on the runningboard of her car and took her purse, are circumstances of any probative value, and they might create some prejudice in the minds of the jury.

It is contended that the evidence concerning defendant's conduct toward his wife during their married life, during

the period of their separation and after their divorce, tended to confuse the jury and was incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute, and was improperly admitted. The People rely on the general rule that any circumstance may be put in evidence which tends to make the proposition at issue either more or less probable, or which has a natural tendency to establish the accused as the perpetrator of the crime, or which tends directly to show defendant guilty of the crime charged, and cite the cases of *People* v. *Tokoly,* 313 Ill. 177, *People* v. *Newsome,* 291 Ill. 11, and *People* v. *King,* 276 Ill. 138. These cases, of course, correctly state the general rule that the evidence must be confined to the point in issue and therefore no evidence of a distinct substantive offense committed is admissible. The test of the admissibility of evidence is the connection of the facts proved with the crime charged, and here the connection at least presents some doubt.

The People further urge that acts, declarations and threats by a husband toward his wife, which arise from jealousy, resentment, hatred and a desire for revenge, and familiarity with the agency by which a crime may be committed are circumstances which show the presence of motive, intent, guilty knowledge and ability to commit the crime, and are therefore legally relevant to the principal fact in dispute, namely, defendant's connection with and guilt of the crime. In support of this proposition they cite the cases of *People* v. *Austin,* 374 Ill. 28, and *People* v. *Reed,* 333 Ill. 397.

In the *Austin case,* at page 29, the court said: "It appears from the evidence that defendant Alice Austin and Earl Austin had been having domestic trouble for a number of years and had separated more than once. For some time prior to Austin's death they had been separated. Austin had filed a suit for divorce and she had filed a counter-claim asking for divorce." Nothing in that case

indicates that details of their married life were presented, but the witnesses for the prosecution were principal witnesses who testified that the defendant, Alice Austin, threatened to kill her husband and that the threats were made from a few months to a few days before Austin was killed. It is also apparent from that case there was direct evidence of her guilt and it was not necessary to resort to details of their married life to bolster up the case on the part of the prosecution.

In the *Reed case* all of the circumstances testified to as being competent to show a motive were occurrences within a very short time prior to the crime in addition to a confession by the defendant that he committed the crime, which was admitted in evidence. The details there as to the prior relationship pertained only to a few months before the alleged offense. As to just what circumstances are proper depends on the closeness of the connection of the facts with the crime charged. We do not think that either of the cited cases would compare with the many details that were permitted to go to the jury in the instant case, and where the case is entirely circumstantial, care must be exercised in permitting evidence to go to the jury which discloses collateral facts that are remote or incapable of affording any reasonable presumption as to the material matters in dispute.

It is contended the jury was allowed to separate to the prejudice of plaintiff in error. The record discloses that, prior to the impaneling of the jury, counsel for the defendant made a motion that the jury be kept together during the trial and not be permitted to go home, on the grounds that there might be considerable publicity in the case, and that the jurors would read the newspaper accounts and this publicity would hurt the defendant's case. The court denied this motion and permitted the jurors to separate at the end of each day during the trial and thereby have access to the newspapers. It is specifically urged by plain-

tiff in error that the newspapers carried bold headlines on the front pages concerning this case, giving an account of the evidence on behalf of the prosecution which tended to influence the jurors' minds against the defendant. We held in the recent case of *People* v. *Wilson, ante,* p. 461, "Under the common law the rule undoubtedly required that the jury be kept together without meat or drink until a verdict was reached. (3 Blackstone, 375.) The rule requires jury trials in this State to be in accordance with the course of the common law. (*Research Hospital* v. *Continental Illinois Bank and Trust Co.* 352 Ill. 510.) There has been some amelioration of the old practice in the course of the years, and to a large extent the question of whether or not the jury should be kept together and not allowed to separate depends upon the sound discretion of the court. It has been said that the job of keeping the jury together is not so much to aid them in reaching a verdict as to prevent them from being influenced by outside sources. Strong language has been used in capital cases that a jury should not be permitted to be separated at all. (*Jumpertz* v. *People,* 21 Ill. 375; *People* v. *Schneider,* 362 Ill. 478; *People* v. *Strause,* 290 Ill. 259.) Other decisions have tended to abate this practice to a certain extent, holding in substance that it is not error, unless prejudice can be shown. (*People* v. *Fisher,* 340 Ill. 216; *People* v. *Casino,* 295 Ill. 204.) We think the *Casino case* is a fair summing up of the rule, *viz.,*—that where separation of the jury is the *only error* relied upon there must be a showing of prejudice, but where other errors intervened such misconduct would have weight on the question of granting a new trial."

The People contend that this court will not set aside a verdict on the bare assumption that the defendant may be, or may have been prejudiced on the trial by newspaper articles referring to a particular trial, in the absence of evidence showing such to be the fact, citing the cases of

*People* v. *Rogers,* 303 Ill. 578; *People* v. *Cain,* 365 Ill. 494, and *Flanigan* v. *People,* 214 Ill. 170; that under these holdings the claim of abuse of discretion in this case is not established by plaintiff in error.

It will be observed that in the cited cases no motion was made before the impaneling of the jury requesting that the jury be kept together and pointing out the conditions wherein prejudice might arise. Neither was a motion made in the cited cases to withdraw a juror and declare a mistrial, but the question arose for determination after the verdict of the jury, and while the question in those cases was correctly determined, the situations there are not comparable with the facts in the instant case. Here a motion was made that the jurors be kept together before the commencement of the trial and just before the jury returned its verdict a further motion was made requesting a mistrial, and two exhibits were offered in support of the motion which are articles taken from two newspapers whose headlines were "Auto Blast Laid to Quarrel" and "Hatred Blamed in Bomb Injury of Ex-Spouse." Under the latter article was information about the former wife testifying about threats.

We think the case of *People* v. *Schneider,* 362 Ill. 478, presents facts which are more analogous with the instant case. In the *Schneider case,* at the beginning of the trial, the defendant requested the jury be kept together during the trial and presented reasons to the court that the case was certain to attract newspaper publicity of a character unfavorable to the defendant. The court overruled the motion and the day after the trial began there was unfavorable publicity. The defendant there moved to withdraw a juror and declare a mistrial, which motion was by the court denied. The court, in reversing the case for a new trial, said: "We think it best to hold the rule to be that the discretion of the trial judge to permit a separation of the jury is one that is subject to review by this court and that

it is the better practice, where an objection is made to such a separation and reasonable grounds are advanced in support of such objection, to require that the jury be kept together and entirely free from extra legal information and influences."

We do not find from the record in the instant case that the court, pursuant to the first motion, made any effort in instructing the jury concerning the matters to which counsel for plaintiff in error objected, or as to their duties in that respect. We think this should have been done. We have held that the court may exercise its discretion in allowing the jurors to separate during the progress of a trial in a criminal case less than capital, unless some sufficient cause is shown why they should be kept together, upon properly instructing them concerning their duties.

If there were no other errors in this case it might be said the showing as to prejudice would not warrant a reversal, but where other errors intervene we think such misconduct would have weight on the question of granting a new trial. Here we are confronted with the serious question raised by plaintiff in error that he was not given an opportunity to argue a motion for a new trial that he might point out clearly to the court, not only the matters pertaining to the showing of prejudice, but fully disclose other irregularities which would deprive defendant of that fair and impartial trial to which he is entitled.

The controversy with reference to a new trial arose immediately after the jury returned its verdict and the following procedure ensued:

"Counsel for plaintiff in error: Your Honor, we have been on trial for about a week and there has been a great deal of evidence in the case, and a great many rulings and I would like an opportunity to make a motion for a new trial and argue the facts and the law in the case.

"Court: Motion denied.

"Counsel for plaintiff in error: And I want the record

to show that I have not been given the privilege of writing out my points for my motion for a new trial, and to be heard on them.

"Court: Objection overruled."

After this ruling and some further discussion between court and counsel, plaintiff in error was given permission to later file his written motion, but without argument and solely for the protection of the record, no further ruling being made thereon.

It is contended by the People that the trial court did not err in this particular since it is apparent that the questions were few and simple, and the case of *People* v. *Zukas,* 337 Ill. 161, quoting from *People* v. *Marx,* 291 Ill. 40, is cited, wherein it is said, "* * * this court will not disturb a verdict and judgment upon the sole ground that the motions for a new trial and in arrest of judgment were acted upon immediately after they were made." They also cite the case of *People* v. *Moretti,* 330 Ill. 422, quoting the following: "Plaintiffs in error contend that they were deprived of some right when the trial court refused to permit them to argue their motion for a new trial, but they do not point out wherein they were prejudiced by this action. The court permitted a motion to be filed and overruled it, and this preserved for them the same rights they would have had if the court had listened to an extended argument. It must be assumed that trial courts will be reasonable and will give attorneys time to prepare and file a written motion for a new trial and to argue the motion where the points raised warrant it. Where the trial is short and the questions few and simple, as in this case, there is no abuse of discretion in a refusal to hear an oral argument of the motion."

With this authority we fully agree, and, under such circumstances as existed there, the court was justified in overruling the motion for a new trial immediately after the verdict, but defendants were permitted to file a motion

which preserved for them the same rights they would have had if the court had listened to the argument. Of course, where the questions are few and simple, no error might appear by overruling the motion for a new trial without permitting argument and where the motion preserves the rights of the defendant for review. However, we are not of the opinion that the questions here are few and simple, but the questions, as heretofore pointed out, pertained to many rulings on objections to certain evidence, vital questions as to the separation of the jury and other matters which, no doubt, would have enlightened the court and had weight in the proper ruling on the motion for a new trial. The trial here lasted a number of days and no good reason appears why counsel for plaintiff in error should not have been granted a short time to prepare the proper motions and argument for a new trial. As was said in the case of *Neathery* v. *People*, 227 Ill. 110, "We think the request of plaintiff in error for time in which to prepare his motion for a new trial was a reasonable one, and that he should have been given the time asked before the motion for a new trial was passed upon. When the motion was presented or the reasons therefor stated, the court could have determined whether he desired to hear argument and could have indicated what further steps should be taken."

As to the merits of the contention that defendant was not proved guilty beyond all reasonable doubt, we are expressing no opinion, as the case will be submitted to another jury to decide that question. Neither is it necessary to pass on the question of prejudicial remarks of the State's Attorney, as they will not likely occur again on a new trial.

The judgment of the criminal court of Cook County is reversed and the cause remanded to that court for a new trial.

*Reversed and remanded.*