(No. 56461.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. EDWARD ALEJOS, JR., Appellee.

*Opinion filed October 4, 1983.*

504

Neil F. Hartigan and Tyrone C. Fahner, Attorneys General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Joan S. Cherry, and Raymond Brogan, Assistant State's Attorneys, of Chicago, of counsel), for the People.

Steven Clark, Deputy Defender (Richard F. Faust, Assistant Appellate Defender, of Chicago, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

Defendant, Edward Alejos, Jr., was charged by information with murder, armed violence based on murder, and armed violence based on voluntary manslaughter, and was convicted in a bench trial in the circuit court of Cook County of voluntary manslaughter and armed violence based on voluntary manslaughter. In this appeal we are called upon to decide whether the armed-violence conviction was proper.

The defendant and the victim, Christian Arntzen, did not know each other. On the evening of October 27, 1978, defendant was sitting in his car in his own neighborhood conversing with an acquaintance, Jeanne Moffat. Bobby Malcolm, a friend of Moffat, had parked his car across the street from defendant's car, narrowing the traffic lane somewhat. Malcolm was standing beside his car and not participating in the conversation. Arntzen drove past the two parked cars but made a U turn at the next intersection, waited for a few minutes, and then left his car and approached Malcolm, accusing him of blocking the street. Malcolm promised to leave, but Arntzen swung his fist at him and then began chasing him around defendant's car, the engine of which was

running. Arntzen then pounded five or six times on the hood of defendant's car and shouted that defendant had tried to run over him. He approached the open window on the driver's side and repeated the accusation, and according to defendant's testimony. stated that he wished to fight with defendant and reached into the car to grab him. Defendant thereupon drew a handgun and shot him six times. Arntzen died four days later.

At trial defendant claimed that he had not tried to run over Arntzen and took the position that the shooting was justified because he had reason to fear for his safety. In announcing his decision the trial judge stated that this was a "[c]lassic case of voluntary manslaughter" and found him guilty of that crime and of armed violence based on voluntary manslaughter.

Defendant appealed on three grounds. His first contention was that the information was insufficient to charge the crime of armed violence based on voluntary manslaughter in that it failed to set forth the elements of voluntary manslaughter, which can be committed in either of two ways. Second, he argued that armed violence could not be predicated on voluntary manslaughter, which is by its nature not a premeditated felony and is typically committed with a "dangerous weapon" which the armed-violence statute requires (see Ill. Rev. Stat. 1979, ch. 38, pars. 33A—1, 33A—2). His third ground was that his simultaneous conviction of manslaughter and armed violence in this case was improper because the same physical act provided the basis for both charges (e.g., People v. Mormon (1982), 92 Ill. 2d 268; People v. Donaldson (1982), 91 Ill. 2d 164). The appellate court reversed the armed-violence conviction on the basis of defendant's first argument and remanded for resentencing on the manslaughter charge, as the two original sentences were concurrent and for the same length of time. (104 Ill. App. 3d 414.)

We do not reach the issue concerning the sufficiency of the armed-violence count because we agree with defendant that the legislature did not intend that crime to apply to voluntary manslaughter.

Because it requires that the defendant's act be motivated by either a sudden and intense passion resulting from serious provocation or an unreasonable but actual belief that the circumstances required the use of deadly force (Ill. Rev. Stat. 1979, ch. 38, pars. 9—2(a), (b)), voluntary manslaughter, by its common law as well as its statutory definition, is an unpremeditated crime, induced by sudden fear or duress and committed without time for proper reflection. (See *People v. Sudduth* (1958), 14 Ill. 2d 605, 607; *People v. Brown* (1946), 392 Ill. 519, 521; *Moore v. People* (1893), 146 Ill. 600, 602; see generally Clark & Marshall, Law of Crimes sec. 10.11 (6th ed. 1958); Ill. Ann. Stat., ch. 38, par. 9—2, Committee Comments, at 392 (Smith-Hurd 1979).) The penalty for murder has traditionally been, and at the time of this homicide was, more severe than that for voluntary manslaughter. However, voluntary manslaughter is not distinguished from murder merely by the punishment or price tag which the law places on the guilty act. The punishment is simply a reflection of the common-sense judgment, which our criminal code has always recognized, that an unlawful homicide which is committed with no planning and no prior intent to commit a crime is neither as serious as a homicide born of criminal deliberation or design, nor as likely to be deterred by threat of punishment as a killing which results from planned criminal acts.

The armed-violence section makes it a Class X felony to commit, while armed with a dangerous weapon such as a handgun, knife or bludgeon, any crime which is a felony under Illinois law (Ill. Rev. Stat. 1979, ch. 38, par. 33A—1 *et seq.*); it was enacted in 1967 "to respond em-

phatically to the growing incidence of violent crime" (*People v. Graham* (1975), 25 Ill. App. 3d 853, 858) and amended in 1977 to apply to felonies in general rather than, as in its original version, to certain enumerated crimes only, none of which were homicide offenses. The two essential elements of armed violence are being armed with a dangerous weapon and committing a felony, and while they must coincide, the mere presence of a weapon of the proscribed character is sufficient; the defendant need not actually use the weapon in the commission of the felony (*People v. Haron* (1981), 85 Ill. 2d 261, 266-68). The presence of a weapon enhances the danger that any felony that is committed will have deadly consequences should the victim offer resistance. Thus, it is viewed as an aggravating factor which enhances the severity of the underlying felony and upgrades the punishment available for it to Class X. See *People v. Donaldson* (1982), 91 Ill. 2d 164, 168.

Just as the presence of a weapon colors the way the law views the felony which defendant commits, so the felony changes the way the law regards the possession of the weapon. Even though the carrying of dangerous weapons in public is always fraught with some danger regardless of what the bearer is doing or intends to do, the armed-violence statute stops short of criminalizing all possession of guns, knives or baseball bats. The commission of a felony while so armed provides the basis for assessing criminal penalties for the act of carrying a dangerous weapon in society, an act which is not in all instances criminal. (Compare Ill. Rev. Stat. 1979, ch. 38, pars. 24—1, 24—3.1 (setting forth the limited circumstances under which the physical possession of certain weapons without more can be a crime).) The reason for the difference in treatment is presumably the belief that the chances that violence will erupt and cause great bodily harm because of the weapon are increased when a

felony is committed; one who creates such danger by committing the felony while possessing the weapon is culpable and should bear the consequences for the danger his conduct poses. The stiff punishment mandated by the armed-violence provision is intended not only to punish the criminal and protect society from him but also to deter his conduct—that of carrying the weapon while committing a felony. See Ill. Rev. Stat. 1979, ch. 38, par. 1001—1—2.

We have noted above the difficulty of thinking conceptually of "deterring" a crime such as voluntary manslaughter which is committed on the spur of the moment and, by definition, without any deliberation. (See, *e.g.*, M. Bassiouni, Criminal Law 95 (1978).) It is similarly difficult to understand the deterrent purpose the armed-violence provision could serve when applied to voluntary manslaughter. The general application of the armed-violence provision could be expected to discourage those who contemplate a felonious act beforehand from carrying a weapon when they set forth to perform the act, and from this perspective the provision serves a needed purpose. Yet no one who commits voluntary manslaughter intends in advance to take a life or employ deadly force; the only "intent" of this sort that enters into the crime is the decision, arrived at without deliberation and in most cases instantaneously, to use force capable of killing. Before that decision is arrived at, the person who is guilty of voluntary manslaughter typically has no criminal intent whatever. Many such people, including the defendant in this case, make the decision to arm themselves long before the onset of the passion or misconception which transforms their intentions from peaceful to homicidal; those that arm themselves later do so after the passion or the misconception takes hold of them, after which deterrence is no longer possible. It is not clear that the legislature intended by means of the armed-vio-

lence section to deter in all instances the carrying of weapons, even deadly ones, for whatever purposes people wish to carry them. This is particularly so in view of the limited nature of the restraints the legislature has placed on the possession of weapons in other parts of the criminal code.

Additionally it is not readily apparent, for purposes of the punitive or retributive goal of the penalty here sought, how the possessor of a weapon who intends no crime but commits voluntary manslaughter can be viewed as more responsible for a situation of public danger than the possessor of a weapon who intends no crime and goes about his business undisturbed. Neither plans to use the weapon at his disposal: the former person does so only in response to external provocation so strong that he does not properly deliberate or channel his response. The law rarely penalizes the latter, as we have explained, while its response to the homicide committed by the former is to exact punishment for the killing even though the law recognizes that the perpetrator lacked intent to commit a crime or bring about a criminal result prior to his decision, arrived at without deliberation, to use force capable of taking a life. (See Ill. Ann. Stat., ch. 38, par. 9—2, Committee Comments, at 392-95 (Smith-Hurd 1979).) The only consideration that distinguishes one who commits voluntary manslaughter while armed with a dangerous weapon from one who commits voluntary manslaughter while not so armed is the fact that a weapon was involved in the former case and the possibility that its bearer might be more able to cause death in the future should he be provoked than one who is not in the habit of carrying weapons. The law does not ordinarily punish what a defendant might do, but only what he does, and assessing greater penalties via the generally worded armed-violence section to conduct which is covered in detail in all of its relevant as-

pects by other provisions of the criminal code is inconsistent with the intent of those provisions.

For these reasons we conclude that the State's suggestion that we may not disregard the plain language of the armed-violence provision which makes it applicable to "any felony defined by Illinois Law" (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2) should be rejected. This rule, set forth in *People v. Moore* (1978), 69 Ill. 2d 520, 523 and *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350, operates only when the statute that is being construed is free from apparent ambiguity, and it remains "the function of the courts to ascertain and give effect to the intent of the legislature, arriving at such intention not only from the language employed in the legislation, but also from the reason and necessity for the law, the evils to be remedied, and the objects and purposes to be obtained" (*Mid-South Chemical Corp. v. Carpentier* (1958), 14 Ill. 2d 514, 517; see *People ex rel. Cason v. Ring* (1968), 41 Ill. 2d 305, 309-10; *People ex rel. Roan v. Wilson* (1950), 405 Ill. 122, 127-28). Nor should the plain-meaning rule prevail over all other aids to construction where literal interpretation of a provision would yield a result inconsistent with other provisions which deal with the same subject and no other evidence of an intent to repeal or significantly alter those provisions can be discerned. (See *People ex rel. Moore v. Chicago, Burlington & Quincy R.R. Co.* (1953), 414 Ill. 419, 425; *Wilderness Society v. Morton* (D.C. Cir. 1973), 479 F.2d 842, 880-81, *cert. denied* (1973), 411 U.S. 917, 36 L. Ed. 2d 309, 93 S. Ct. 1550, and cases cited therein; 2A A. Sutherland, Statutory Construction sec. 51.01 (3d ed. 1973); compare *Berger v. Howlett* (1962), 25 Ill. 2d 128, 137 (a statute which is specific, complete in itself and intelligible on its face need not be read *in pari materia* with existing statutes but may modify them by implication).) We observe finally that the words "any felony" in

the armed-violence statute are not without exception: in *People v. Wisslead* (1983), 94 Ill. 2d 190, this court ruled that they did not apply to forcible detention for constitutional reasons, while in *People v. Haron* (1981), 85 Ill. 2d 261, 278, we held that applying them to felonies which themselves required the use of dangerous weapons would be inconsistent with an assumption made in another part of the armed-violence provision that the underlying felony would retain a felony classification if committed while unarmed (Ill. Rev. Stat. 1979, ch. 38, par. 33A—3(b)).

In *Haron* we noted that where, as here, "we have no legislative history to assist us in determining whether the General Assembly intended the *** enhancement to apply to such charges," this court "has recognized that a policy of lenity applies with respect to the interpretation of criminal statutes [citations], and also recognizes the rule of construction giving precedence to a specific provision where it conflicts with a general one. [Citation.]" (*People v. Haron* (1981), 85 Ill. 2d 261, 277-78.) This court has recognized since *Haron* "the principle that ambiguities in penal statutes, particularly in the case of enhancement provisions, must be resolved in favor of the defendant" (*People v. McCarty* (1983), 94 Ill. 2d 28, 34-35; see *People v. Donaldson* (1982), 91 Ill. 2d 164, 169; *People v. Hobbs* (1981), 86 Ill. 2d 242, 246; *People v. Lund* (1943), 382 Ill. 213, 215-16; *cf. People v. Carlock* (1981), 102 Ill. App. 3d 1100, 1102 (a statute which enhances a penalty "is highly penal and should not be extended in its application to cases which do not, by the strictest construction, fall within its terms")). All of these cases involved the substantive reach of a general and all-inclusive enhancement provision found in the criminal code. In view of the fact that the carrying of weapons is not a criminal offense in all instances and the improbability that the armed-violence provision will deter

those who commit voluntary manslaughter, we conclude that the rule of lenity is appropriate here. We decline to apply the armed-violence statute literally to voluntary manslaughter. We disapprove of the appellate court's decision in *People v. Lynom* (1981), 97 Ill. App. 3d 1113, *modified by supervisory order on denial of leave to appeal* (1982), 91 Ill. 2d 563 n.5, to the extent that it held that armed violence could be so applied.

Defendant argues that, in case of a reversal of his armed-violence conviction, we should remand the cause for resentencing on the manslaughter conviction, as the appellate court did, to guard against the possibility that the presence of the improper armed-violence conviction, on which a seven-year sentence was imposed, might have influenced the trial court's sentence on the manslaughter charge, which was seven years and concurrent with the sentence for armed violence. He notes that seven years was the longest imprisonment that could be imposed for voluntary manslaughter absent an aggravating factor which might lead to an extended term (Ill. Rev. Stat. 1979, ch. 38, pars. 9—2(c), 1005—8—1(a)(5), 1005—8—2(a)(4)) and that no extended term was imposed.

We need not decide here whether the standard for a remand for resentencing is the inability to determine affirmatively from the record whether the sentence was influenced by the consideration of improper factors, as courts in this State have held in *People v. Conover* (1981), 84 Ill. 2d 400, *People v. Bone* (1982), 103 Ill. App. 3d 1066, *People v. Filker* (1981), 101 Ill. App. 3d 228, and *People v. Green* (1980), 83 Ill. App. 3d 982, or whether the defendant must come forward with convincing evidence that the judge or jury was so influenced, as the State suggests, relying upon *People v. Donaldson* (1982), 91 Ill. 2d 164, and *People v. Miles* (1981), 96 Ill. App. 3d 721. The record in this case satisfies the latter standard. The emphasis the sentencing judge placed

upon the defendant's use of a gun persuades us that he was influenced by this circumstance in deciding the length of the sentence for voluntary manslaughter. The court referred to the defendant's use of a gun in the following language in finding him guilty of manslaughter and armed violence:

"*** Why people run around the streets with guns loaded is beyond me. Don't go around the street with a loaded gun even if you're talking about shooting target pistol two days hence.

No question about it, a very small man. Apparently, the gun is the thing that makes him feel power, and apparently a loaded gun even makes him feel taller, and the sad thing about it is we have two individuals in the street who should be friends.

What happens, we have a fight, an altercation, and the defendant by way of having his so-called tough gun next to him shoots and kills the man during the course of the dispute."

At the sentencing hearing, the judge stated immediately before announcing the sentence:

"THE COURT: For some reason — you're a small guy and apparently you think you're a tough guy. One of the big things that I fear about small guys is attempting to make yourself bigger, you carry a gun. That's exactly what happened here, you carried a gun, you were acting tough and a fight ensued, you pulled the gun and you killed somebody, which is sad. Basically, that is the story of your whole life. *** And *** you got a violent temper, therefore, you can't carry a gun or anything, you'll get in trouble, the next guy will probably be you who dies."

These comments were directed at the fact that the defendant used a gun, a factor which the trial judge obviously, but mistakenly, determined merited enhanced criminal punishment in the instant case. We therefore vacate the sentence and remand the cause to the circuit court for resentencing on the voluntary-manslaughter conviction. See *People v. Green* (1980), 83 Ill. App. 3d 982, 987.

For the reasons stated herein, rather than those set forth by the appellate court, we affirm the judgment of the appellate court.

*Judgment affirmed.*