THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SHERRYL DECKER, Defendant-Appellant.

Fourth District   No. 4—83—0729

Opinion filed August 2, 1984.

Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellant.

Edward Litak, State's Attorney, of Danville (Robert J. Biderman and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

The defendant, Sherryl Decker, was tried by a jury, acquitted of attempted murder but convicted of two counts each of armed violence and aggravated battery, and sentenced to 18 years' imprisonment. The offenses occurred when a Vermilion County sheriff's deputy was trying to serve an arrest warrant for a minor offense on the defendant's husband; shooting broke out, and the deputy was wounded in the neck and in the abdomen. On appeal the defendant argues that armed violence was doubly enhanced and unconstitutionally disproportionate here, that the trial judge erred in excluding some testimony regarding the defendant's husband's acts of violence, and that her sentence is excessive. We affirm.

The defendant does not raise the question whether her guilt was proved beyond a reasonable doubt, so only a brief summary of the evidence is required. The offenses here occurred on April 11, 1983, in a rural area of Vermilion County. That day Deputy Deckard and Investigator Howard telephoned Robert Decker, the defendant's husband, to tell him that they wanted to inspect his gun collection; some neighbors had complained about his firing of automatic weapons in the vicinity. They did not tell Decker that they were also going to serve him with an arrest warrant. Deckard and Howard arrived at the house at about 3 o'clock in the afternoon. The house was owned by Robert Peevler, husband of Connie Peevler, Robert Decker's daughter. At the time involved here the defendant, Robert Decker, their three

children, a nephew of Robert Decker, and the nephew's girlfriend were living at the house with the Peevlers and their two children. After examining nine guns, none of which were fully automatic, the deputies told Robert Decker about the warrant for his arrest on a misdemeanor charge; Robert Decker told them that he would rather die than go to jail. The officers advised him that he would be released upon posting bond of $100, and Investigator Howard took hold of his arm. Robert Decker got loose, ran out of the house, and then fired a shot at the deputies. Shots were fired from inside the house too. Deputy Deckard was shot in the neck and the abdomen and wounded seriously. Robert Decker escaped; later that day he took a woman hostage and forced her at gunpoint to drive him to Indianapolis, where he let the hostage go and then killed himself.

The defendant was charged and tried both as a principal and an accomplice. She raised the affirmative defense of compulsion and testified that she fired a gun several times during the disturbance but did so only in response to her husband's command. She testified that she did not aim at or hit anyone. Defendant also described a long history of brutal abuse inflicted on her by Robert Decker. Other family members, testifying in the defendant's behalf, corroborated this information. The trial judge did not allow an additional witness, Dorothea Roby, mother of Robert Decker, to testify on this subject; the court agreed with the State's objection that the occurrences described in Roby's testimony were too remote in time to be relevant.

The jury found the defendant guilty of two counts of armed violence and of the predicate felonies of aggravated battery and acquitted her of attempted murder; two other charges, conspiracy to commit murder and aggravated battery by use of a deadly weapon, had been dismissed before trial on motion of the State. The trial judge did not impose sentence on the two convictions for aggravated battery, for they merged in the armed violence convictions. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477.) The bases for the two counts of aggravated battery were the great bodily harm inflicted on Deputy Deckard (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(a)) and his employment as a peace officer carrying out official duties (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(b)(6)); the State did not distinguish the charges on the basis of the separate wounds suffered by the deputy. Thus, the convictions for armed violence stemmed from a single act, and the trial judge imposed sentence on only one of them, that predicated on great bodily harm. See *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838 (a single act may support only a single conviction and sentence).

## I

■ The defendant's first argument concerns the proper scope of the armed violence statute, which enhances the penalties for various felonies if they are committed while the defendant is armed with a dangerous weapon. The offense is defined by section 33A—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 33A—2), which says:

> "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law."

The armed violence statute may apply even though the weapon is not used in committing the predicate felony; its mere presence may be enough. (*People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627.) Dangerous weapons are divided into two categories (Ill. Rev. Stat. 1981, ch. 38, par. 33A—1), and the weapon that was used here, a handgun, falls into the more serious category, making the offense a Class X felony (Ill. Rev. Stat. 1981, ch. 38, par. 33A—3). The defendant argues that the armed violence conviction on which she was sentenced resulted from the impermissible double enhancement of her use of a gun in committing the underlying act. She also argues that the Class X penalty for this conviction is unconstitutionally disproportionate because her conduct is punished more severely than other, more serious offenses. Although the defendant arguably has waived these questions by failing to properly present them in the trial court, we choose instead to address them on their merits.

## A

■ The only conviction on which the defendant was sentenced was one for armed violence. The predicate offense for that was aggravated battery causing great bodily harm (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(a)), a Class 3 felony (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(e)); simple battery is a Class A misdemeanor (Ill. Rev. Stat. 1981, ch. 38, par. 12—3). Because the great bodily harm, consisting of Deputy Deckard's serious neck and abdominal injuries, was caused by a gun, the defendant argues that that weapon should not then be used to raise aggravated battery to the Class X felony of armed violence. The defendant argues that the penalty for her criminal conduct is being doubly enhanced by her use of the gun, contrary to *Haron*. In *Haron* the court said:

> "Our review of the language of the statute and the authorities leads us to conclude that the General Assembly did not intend that the presence of a weapon serve to enhance an offense

from misdemeanor to felony and also to serve as the basis for a charge of armed violence. In our opinion the requirement of section 33A—2 that there be the commission of a felony while armed with a dangerous weapon contemplates the commission of a predicate offense which is a felony without enhancement by the presence of a weapon." (*People v. Haron* (1981), 85 Ill. 2d 261, 278, 422 N.E.2d 627, 634.)

Thus, the court held that a charge of aggravated battery based on the use of a deadly weapon could not serve as the predicate felony for armed violence. As in *Haron*, the chain of double enhancement here would begin with a misdemeanor, battery, and not with a felony; we are not confronted with the question whether *Haron* applies also to a predicate felony that already has been enhanced from another class of felony rather than from a misdemeanor. Compare *People v. Del Percio* (1983), 118 Ill. App. 3d 539, 454 N.E.2d 1169, *appeal allowed* (1984), 96 Ill. 2d 569, and *People v. Goodman* (1982), 109 Ill. App. 3d 203, 440 N.E.2d 345, with *People v. Lucien* (1982), 109 Ill. App. 3d 412, 440 N.E.2d 899.

Here, unlike *Haron*, the predicate felony for armed violence is not aggravated battery by use of a deadly weapon (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(b)(1)) but the distinct offense of aggravated battery causing great bodily harm (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(a)). The elements of the predicate felony should guide us here and should provide the basis for determining whether a violation of *Haron* has occurred. The presence or use of a weapon is not an element of aggravated battery causing great bodily harm, so therefore that offense may serve as the predicate felony for armed violence even though, as in the case here, the evidence adduced at trial shows that the harm was caused by the dangerous weapon. See *People v. Owens* (1982), 109 Ill. App. 3d 1150, 441 N.E.2d 908, and *People v. Garcia* (1981), 103 Ill. App. 3d 779, 431 N.E.2d 1234 (no double enhancement when predicate felony for armed violence is aggravated battery causing great bodily harm).

Further support for this decision is found in *Haron* itself. The court said:

"Although it would appear that the aggravated-battery charge could have been based on section 12—4(a), [*i.e.*, aggravated-battery causing great bodily harm], the aggravated-battery count against Haron charges that in committing the offense he used a deadly weapon (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(1)). Thus the enhancement of the offense of battery to that of aggravated battery was based on the use of a deadly weapon."

(*People v. Haron* (1981), 85 Ill. 2d 261, 277, 422 N.E.2d 627, 634.)

This suggests that the court would not have found double enhancement had Haron's charge of armed violence been based instead on the form of aggravated battery used here, great bodily harm. Similarly, in *People v. Van Winkle* (1981), 88 Ill. 2d 220, 430 N.E.2d 987, which reversed a defendant's conviction for armed violence because the predicate felony was aggravated battery by using a deadly weapon, the court observed that aggravated battery causing great bodily harm probably could have been charged instead. See also *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477 (under the rules that a single act may support only a single conviction and that the predicate felony is an included offense of armed violence, the court vacated the defendant's conviction for aggravated battery causing great bodily harm, the predicate felony there for armed violence).

Therefore, we conclude that the defendant's use of a gun was not doubly enhanced and her conviction for armed violence predicated on aggravated battery causing great bodily harm is not contrary to *Haron*.

### B

■■■ The defendant also argues that the Class X penalty for her conviction for armed violence is unconstitutionally disproportionate because it is more severe than the potential punishment for a more serious offense, voluntary manslaughter. The defendant relies on two recent decisions by the supreme court finding exceptions to the broad language of the armed violence statute, which purports to enhance any felony that one may commit while armed.

In *People v. Alejos* (1983), 97 Ill. 2d 502, 455 N.E.2d 48, the supreme court held that voluntary manslaughter, a Class 1 felony, may not serve as the predicate felony for a charge of armed violence. Thus, voluntary manslaughter, even when committed with a gun, remains a Class 1 felony, and the defendant argues that because her conduct here was less serious than the offense of voluntary manslaughter, her potential punishment may not be greater. The defendant borrows this analysis from *People v. Wisslead* (1983), 94 Ill. 2d 190, 446 N.E.2d 512, which held that unlawful restraint may not serve as the predicate felony for armed violence because greater offenses committed while armed, aggravated kidnaping and forcible detention, are punished less severely. *Wisslead* held that this violates the provisions in the Illinois Constitution on due process and proportionate penalties (Ill. Const. 1970, art. I, secs. 2, 11). The defendant

reaches a similar conclusion here, invoking the same provisions in the State constitution. To hold otherwise, the defendant argues, would encourage the commission of the more serious offense.

Ordinarily one offense is considered more serious than another simply because it is punished more severely; the various classes of offenses, with their different available penalties, provide a clear method for ranking the relative gravity of different crimes, and in the usual case the inquiry ends there. When this ordering principle is called into question, as it is here, then other criteria must be examined. For example, "Few would dispute that a lesser included offense should not be punished more severely than the greater offense." (*Solem v. Helm* (1983), 463 U.S. 277, 293, 77 L. Ed. 2d 637, 651, 103 S. Ct. 3001, 3011.) *Wisslead* illustrates the use of that principle. The defendant there was charged with unlawful restraint, a Class 4 felony, and with armed violence predicated on that. In holding that unlawful restraint may not serve as the predicate felony, the court compared that offense with two others, aggravated kidnaping and forcible detention. Though committed with the same type of weapon as the Class X armed violence, aggravated kidnaping would be a Class 1 felony and forcible detention a Class 2 felony. In concluding that aggravated kidnaping is more serious than armed violence predicated on unlawful restraint, the court noted, "The penalty prescribed for unlawful restraint and the type of conduct involved in its commission illustrate that it is less serious than kidnaping." (*People v. Wisslead* (1983), 94 Ill. 2d 190, 195, 446 N.E.2d 512, 514.) Incongruously, the less serious offense committed while armed was punishable more severely than the more serious offense committed while armed. Also, armed violence predicated on unlawful restraint is an included offense of forcible detention, committed while armed, yet may be punished more severely. See also *People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029 (punishing possession of controlled substance more severely than delivery of same substance was contrary to legislature's express intent and violated due process).

*Wisslead* depended on a comparison of closely related offenses, classifiable as included and greater. Here, the offense with which the defendant compares her conviction for armed violence is voluntary manslaughter, something unrelated and fundamentally different, and aggravated battery causing great bodily harm is not included in it. Besides the principle that an included offense should not be punished more severely than a greater offense, a number of other criteria exist that may guide a court in judging the relative gravity of an offense, a function normally performed by the legislature. These criteria include

the use or absence of violence or threat of violence, the magnitude of the crime, the culpability of the offender, his mental state, and his motive. *Solem v. Helm* (1983), 459 U.S. 986, 77 L. Ed. 2d 637, 103 S. Ct. 3001.

Certainly the death of the victim is one respect in which voluntary manslaughter is more serious than the offense here of armed violence. But that circumstance is inherent in every comparison of voluntary manslaughter with an offense in which no one is killed, and if that were the only criterion, then armed violence with a category I weapon—the Class X offense—could never be predicated on a nonfatal felony. We do not think that the court in *Alejos* intended that result. In other respects, such as the offender's motive, voluntary manslaughter is less serious than the conduct in question here, and the reasons set out in *Alejos* for not applying the armed violence provision to voluntary manslaughter are relevant in this regard. In *Alejos* the court articulated the distinctive nature of voluntary manslaughter:

> "Because it requires that the defendant's act be motivated by either a sudden and intense passion resulting from serious provocation or an unreasonable but actual belief that the circumstances required the use of deadly force (Ill. Rev. Stat. 1979, ch. 38, pars. 9—2(a), (b)), voluntary manslaughter, by its common law as well as its statutory definition, is an unpremeditated crime, induced by sudden fear or duress and committed without time for proper reflection. [citations]." (*People v. Alejos* (1983), 97 Ill. 2d 502, 507, 455 N.E.2d 48, 50.)

These characteristics of voluntary manslaughter made it unsuitable to serve as the predicate felony for armed violence:

> "The general application of the armed-violence provision could be expected to discourage those who contemplate a felonious act beforehand from carrying a weapon when they set forth to perform the act, and from this perspective the provision serves a needed purpose. Yet no one who commits voluntary manslaughter intends in advance to take a life or employ deadly force; the only 'intent' of this sort that enters into the crime is the decision, arrived at without deliberation and in most cases instantaneously, to use force capable of killing. Before that decision is arrived at, the person who is guilty of voluntary manslaughter typically has no criminal intent whatever." 97 Ill. 2d 502, 509, 455 N.E.2d 48, 51.

Guided by the criteria suggested in *Solem* and by the nature of voluntary manslaughter, we conclude that aggravated battery causing great bodily harm, when committed with a weapon, may be consid-

ered more serious than voluntary manslaughter committed with a weapon, and therefore the statutory scheme producing this result is constitutional.

## II

■ The defendant next argues that the trial court erred in excluding the testimony of Dorothea Roby, who would have provided confirmation of the vicious control that Robert Decker, her son, exerted over the members of his family, including his parents and the defendant. The defendant argues that Roby's testimony was crucial to her defense of compulsion and that the court's decision to exclude that testimony denied her the constitutional right to present a defense. (See *Washington v. Texas* (1967), 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920 (right to present a defense is a fundamental element of due process).) The trial judge found that the occurrences that Roby would have testified about were too remote in time and therefore excluded that testimony as irrelevant.

Originally the defendant was charged only as a principal, and she raised the defense of compulsion to counter the State's decision to try her as an accomplice also. Thus, at trial the defendant denied shooting at or wounding Deputy Deckard, and she testified that she harmlessly fired her gun several times at a wall or door in response to her husband's command to help him and shoot. According to the defendant, after breaking loose from Investigator Howard, Robert Decker reentered the house, grabbed the defendant's gun, and fired at and hit Deputy Deckard. Evidence introduced by the State showed instead that it was the defendant who shot and wounded the deputy.

Section 7—11(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 7—11(a)) sets forth the affirmative defense of compulsion:

> "A person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believes death or great bodily harm will be inflicted upon him if he does not perform such conduct."

The jury was instructed on compulsion. The defendant carried out her burden of producing some evidence of the defense by her own testimony, which detailed her 17-year relationship with Robert Decker, and by the testimony of two of her children, Debbie and Scott Decker, and the Peevlers; they described occurrences in the family's life since September 1982, when the defendant moved to the house upon her release from prison in Indiana. This testimony showed that Robert

Decker tyranically controlled the operation of the household and the lives of the inhabitants. He beat the defendant when she failed to follow his orders. He was fascinated by guns and practiced target shooting endlessly, sometimes trying to shoot out the lighted ends of cigarettes that the defendant held in her mouth. Whenever the defendant refused to be a target, or refused any of Robert Decker's other orders, he beat her up.

The trial judge declined to admit into evidence the testimony of Dorothea Roby, Robert Decker's mother. The court explained that the most recent occurrences that Roby would describe happened in 1981, about two years before the events here. In an offer of proof Roby recounted beatings inflicted on the defendant by Robert Decker, and Decker's threats against his parents whenever they tried to intervene. Part of her testimony pertained to events occurring even before 1971.

A trial judge's decision whether to admit or exclude testimony as relevant or irrelevant is reserved to his discretion. (*People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696.) Evidence may be irrelevant if it is remote in time from the the the fact of consequence that it is being offered to prove. (See *People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696; *People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590; *People v. Wilson* (1948), 400 Ill. 603, 81 N.E.2d 445.) Here, the trial judge was correct in excluding Roby's testimony. What Robert Decker did in 1971 had little bearing on the defendant's fear of him in 1983, and even occurrences in 1981 were too remote to be relevant evidence. The point in time at which these occurrences would have been relevant cannot be fixed with precision, and the trial judge did not abuse his discretion in barring this testimony, which concerned events that occurred two or more years before the offenses here. The trial judge's decision did not deny the defendant her constitutional right to present the defense of compulsion. Other, relevant testimony on that was admitted.

### III

█ The defendant argues last that her sentence of 18 years' imprisonment, imposed on a single conviction for armed violence, is excessive. The offense here was a Class X felony, punishable by a term of imprisonment of between 6 and 30 years (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(3)) and a fine of up to $10,000 (Ill. Rev. Stat. 1981, ch. 38, par. 1005—9—1(a)(1)).

The defendant's sentence is not an abuse of discretion. (See *People v. La Pointe* (1982), 88 Ill. 2d 482, 431 N.E.2d 344 (expressing standard for appellate review of sentences).) The defendant was con-

victed of several felonies and misdemeanors in Indiana in the period from 1979 to 1981; for the most part they were thefts or arose from her possession of guns. No sentence exceeded two years' imprisonment. The conduct here was serious. When Robert Decker learned that the sheriff's deputies were coming to his house, he ordered everyone present to arm himself or herself, and he handed the defendant her gun. In the events that followed Deputy Deckard was wounded seriously. The trial judge considered the factors offered by the defendant in mitigation. Given the nature and circumstances of the offense and the history and character of the defendant, we conclude that her 18-year sentence of imprisonment for armed violence predicated on aggravated battery causing great bodily harm is not an abuse of discretion. We said earlier that the predicate felonies merged in the two convictions for armed violence, which were based on the same act and redundant, and therefore we vacate the three extra convictions, on which the defendant was not sentenced.

Affirmed in part and vacated in part.

MILLS, P.J., and WEBBER, J., concur.