THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM M. BIESIADA, Defendant-Appellant.

Third District   No. 3—89—0434

Opinion filed July 13, 1990.—Rehearing denied September 4, 1990.

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.

Larry VanDerSnick, State's Attorney, of Cambridge (Terry A. Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GORMAN delivered the opinion of the court:

Following a jury trial, defendant William M. Biesiada was found guilty of two counts of second degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a)(1)) and four counts of armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2). The trial court vacated one second degree murder conviction and one armed violence conviction (predicated on the murder charge) and sentenced the defendant to four consecutive 10-year prison terms. The defendant appeals his convictions and sentences. We affirm.

The record reveals the following information. The defendant was a member of a group of people who had been "feuding" with a rival group in the neighborhood. While the feud had been taking place for some time, it had escalated significantly during the summer of 1988. The events of August 18 and 19, 1988, precipitated the incident that led to the defendant's arrest and subsequent conviction.

Donovan Bellcour, 15-year-old nephew of the defendant's girlfriend, Dixie Heaton, testified that on August 18, 1988, at approximately 10 p.m., he was involved in a fight with members of the rival group. After being knocked to the ground by Bill Johnston, Donovan was kicked in the abdomen by Brian Hardy. The Kewanee police department responded to the altercation and separated the two groups, ordering them to return to their homes. No arrests were made. Donovan was having trouble breathing and was taken to the hospital by his mother, Becky Zapisek.

Members of the rival group went to Brian and Verna Hardy's

house. Members of the defendant's group congregated at Dixie Heaton's house. The Heaton house is located across the street from the Hardy house.

Members of the rival group sat on the Hardy house porch and yelled obscenities toward the Heaton house. When 15-year-old Melissa Blank joined the rival group on the Hardy porch, she was advised in celebratory terms that Donovan had been sent to the hospital as a result of a fight between Donovan and Brian and Bill. Comments were directed toward the Heaton house that the defendant's new truck would be "trashed." The defendant moved the truck closer to the Heaton house.

Becky Zapisek and her sister returned to the Heaton house at approximately 11:45 p.m. on August 18, 1988. They were greeted by jeers of "sluts" and "bitches" as they exited the car and entered the Heaton house. Once inside, Becky related to the group that Donovan was going to be kept overnight in the hospital for observation of possible liver or kidney damage.

According to the testimony of Becky, the defendant had a close relationship to Donovan. In response to the news about Donovan, the defendant had a worried, panicky look on his face and began pacing inside the house. Becky related that when the defendant opened the door facing the porch and looked outside, members from the rival group shouted "bastard" and "retard" and told him to go back inside. Threats were made that the house and his truck would be trashed. The defendant came back inside. Becky testified that he resumed pacing about the inside of the house, was pale and seemed to be getting more upset. The defendant then left the house and walked toward his truck. Becky testified that she heard name-calling and yelling as the defendant walked into the yard. She turned to talk to Dixie and heard gunshots. She turned and saw the defendant pointing a gun at the Hardy residence.

Several people were at the Hardy house when the defendant started shooting. Some were on the porch while others were inside. It was the testimony of several witnesses that the defendant retrieved a rifle from his truck and, in rapid succession, discharged it in the direction of the Hardy house. Brian Hardy was killed instantly by a shot to the head. Melissa Blank was shot twice, once in the shoulder and once in the hip. Sandra Blank, Melissa's mother, was shot once in the leg. Marilyn Johnston, Verna and Bill's mother, was shot once, the bullet travelling through one leg and lodging in the second leg.

After firing the shots, the defendant threw the gun in his truck and exited the area at a high rate of speed. He was apprehended

without incident approximately one hour later. The defendant indicated in police reports that he did not recall the shooting but did recall people running and yelling. He recalled driving in his truck, but did not know that he fired a gun or where he disposed of it. The gun was never recovered. The defendant did not testify at trial.

The defendant was subsequently charged with two counts of first degree murder (Brian Hardy), three counts of attempted murder (Melissa Blank, Sandra Blank and Marilyn Johnson), and four counts of armed violence (one predicated on the murder of Brian Hardy, and three predicated on the aggravated battery of Melissa Blank, Sandra Blank and Marilyn Johnston).

Following a trial by jury, the defendant was found guilty of two counts of second degree murder and four counts of armed violence. He was found not guilty of the three attempted murder charges. The trial court vacated one of the second degree murder convictions as well as the armed violence conviction in regard to the murder of Brian Hardy. The trial court sentenced the defendant to four consecutive 10-year terms of imprisonment. The defendant appeals his convictions and sentences, raising several issues for this court's consideration.

The defendant initially contends that he was not proved guilty of armed violence beyond a reasonable doubt. The defendant argues that the purpose of the armed violence statute is to deter the commission of a felony while armed with a dangerous weapon. Accordingly, since the evidence in the instant case shows that the underlying felony, aggravated battery, was not planned and the defendant was not armed until the precise time of the shooting, his convictions for the armed violence counts must be reversed.

■ We cannot agree with the defendant's position. In *People v. Eure* (1986), 140 Ill. App. 3d 387, 488 N.E.2d 1267, the defendant was convicted on two counts of aggravated battery and one count of armed violence predicated on aggravated battery causing great bodily harm. The court in *Eure* distinguished *People v. Alejos* (1983), 97 Ill. 2d 502, 455 N.E.2d 48 (armed violence predicated upon voluntary manslaughter), and *People v. Fernetti* (1984), 104 Ill. 2d 19, 470 N.E.2d 501 (armed violence predicated upon involuntary manslaughter), noting that aggravated battery is a specific intent crime and since the use of a weapon can be deterred, "the purposes of the armed-violence statute may therefore be achieved by application of that offense to the predicate felony of aggravated battery." *People v. Eure* (1986), 140 Ill. App. 3d 387, 395, 488 N.E.2d 1267.

■ While it is true that the facts in *Eure* are different from the

facts involved in the instant case, we find that the same principles apply. In the instant case, the jury found the defendant guilty of three counts of armed violence predicated upon aggravated battery causing great bodily harm. Clearly the intent of the armed violence statute is to deter the commission of a felony while armed with a dangerous weapon. Whether the defendant had that weapon on his person *prior* to the commission of the predicate offense should not be the determinative factor. We read the statute broadly such that, prior to the underlying offense taking place, whether the defendant has a weapon on his person or whether he simply has ready access to that weapon, as long as he employs the dangerous weapon during the course of the underlying felony, the armed violence statute may properly be applied.

The defendant next makes a two-part argument that the armed violence statute was unconstitutionally applied to him in this case, resulting in an unjust sentencing scheme. The defendant first contends that he was subjected to greater penalties for wounding the three female victims than for killing Brian Hardy.

This contention was raised in *People v. Decker* (1984), 126 Ill. App. 3d 428, 467 N.E.2d 366. In *Decker*, the defendant was acquitted of attempted murder but was convicted of two counts of armed violence and aggravated battery. The defendant argued that the Class X penalty for armed violence was unconstitutionally disproportionate because it was more severe than the potential punishment for the more serious offense of voluntary manslaughter. As in the instant case, the defendant in *Decker* relied heavily upon *People v. Wisslead* (1983), 94 Ill. 2d 190, 446 N.E.2d 512, in support of her argument.

■ The court in *Decker* rejected the defendant's argument. The court noted that the decision in *Wisslead* depended upon a comparison of closely related offenses, classifiable as included and greater. However, the court noted that voluntary manslaughter is unrelated to and fundamentally different from aggravated battery, and aggravated battery is not a lesser included offense of it. *Decker*, 126 Ill. App. 3d at 434.

The court acknowledged that the death of the victim is one respect in which voluntary manslaughter is more serious than the offense of armed violence predicated upon aggravated battery. But the court also noted that such a circumstance is inherent in every comparison of voluntary manslaughter with an offense in which no one is killed, and if that were the only criterion, armed violence with a category I weapon could never be predicated upon a nonfatal felony. The court also noted in other respects, such as the offender's motive, voluntary manslaughter is less serious than armed violence predicated

upon aggravated battery. Therefore, the court concluded that aggravated battery causing great bodily harm, when committed with a weapon, may be considered more serious than voluntary manslaughter committed with a weapon and that the statutory scheme producing that result was constitutional. *Decker*, 126 Ill. App. 3d at 435.

█ We find *Decker* persuasive. As in *Decker*, it can be said that the death of the victim is one respect in which second degree murder is a more serious offense than armed violence predicated upon aggravated battery. However, the defendant's motive in second degree murder is less culpable than the motive of a defendant in aggravated battery. Additionally, armed violence predicated upon aggravated battery is unrelated to and fundamentally different from second degree murder. We conclude that the sentencing scheme in providing for a greater potential penalty for armed violence predicated upon aggravated battery than for second degree murder is not unconstitutional.

The defendant's second argument in regard to this issue contends that the armed violence statute was unconstitutionally applied to him. The defendant argues that the presence of a dangerous weapon rendered him subject to the same potential penalty for aggravated battery as for attempted murder even though he was found not guilty of attempted murder and aggravated battery was a lesser included offense of attempted murder in this case.

█ The defendant's entire argument is based upon a misconception that armed violence predicated upon aggravated battery for causing great bodily harm is a lesser included offense of attempted murder. An included offense is an offense which is established by proof of the same or less than all of the facts or a less culpable mental state than that which is required to establish the commission of the offense charged. Ill. Rev. Stat. 1987, ch. 38, par. 2—9(a).

█ In order to be found guilty of the offense of attempted murder, there is no requirement that a category I weapon, or for that matter, any other weapon, be used. Moreover, in order to be found guilty of attempted murder there is no requirement that the defendant suffer great bodily harm. Therefore, armed violence predicated upon aggravated battery for causing great bodily harm is not an included offense of attempted murder.

The defendant's third issue contends that he was subjected to double enhancement in the sentencing scheme, which resulted in consecutive terms of imprisonment.

█ The defendant was sentenced to four consecutive sentences pursuant to section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(a)), which provides in relevant part:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury *** in which event the court shall enter sentences to run consecutively ***."

The defendant maintains that the mandatory sentencing provision should not have been applied here because the element of great bodily harm was used to raise misdemeanor battery to felony aggravated battery, which, in turn, formed the predicate for the Class X felony of armed violence, thus triggering the mandatory imposition of consecutive sentences. The defendant cites no authority for this proposition.

■■ We cannot agree that this constituted double enhancement. The statute does not require that all of the offenses under this section cause severe bodily harm. It clearly states "one of the offenses" causing such harm is sufficient. Considering the Class 1 second degree murder of Hardy and the three Class X armed violence convictions, the plain language of the statute directs the consecutive sentences. Accordingly, we find that the trial court properly followed the statute in sentencing the defendant to consecutive sentences.

■■ The defendant raises additional issues that the judge at sentencing considered improper factors and that the sentence of 40 years was excessive. After examining the briefs of both parties and the record before us, we are of the opinion that these issues are without merit.

The decision of the circuit court of Henry County is affirmed.

Affirmed.

STOUDER and BARRY, JJ., concur.