THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARENZO YOUNG, Defendant-Appellant.

First District (2nd Division)   No. 1—98—2408

Opinion filed September 5, 2000.—Rehearing denied November 1, 2000.

Michael J. Pelletier and Bonnie Kim, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McBRIDE delivered the opinion of the court:

On March 9, 1996, Donquelo Bailey, Deon Brisco and Derrick Rogers were shot by defendant during an altercation. Although Bailey was fatally wounded, Brisco and Rogers were not. Defendant was found guilty of the second degree murder of Bailey and he was also found guilty of armed violence predicated upon aggravated battery committed against Brisco. In addition, defendant was found guilty of aggravated battery with a firearm, aggravated discharge of a firearm, aggravated battery causing great bodily harm to Brisco and aggravated battery on a public way. All of the aggravated battery counts were merged at the time of sentencing. Derrick Rogers never testified at

trial and subsequently defendant was found not guilty of all the counts relating to the shooting of Rogers. Defendant was sentenced to 10 years' imprisonment for the second degree murder conviction and a consecutive sentence of 15 years' imprisonment for armed violence. On appeal, defendant raises three issues: (1) he cannot be simultaneously convicted of second degree murder and armed violence predicated on aggravated battery with respect to Brisco, when both offenses were committed with the same mental state; (2) the conviction for armed violence violated the proportionate penalties clause of Illinois' Constitution (Ill. Const. 1970, art. I, § 11); and (3) Public Act 88—680 (Pub. Act 88—680, eff. January 1, 1995), which increased the mandatory minimum sentence for an armed violence conviction with a category I weapon, violated the single subject rule, making his current sentence invalid.

At trial, Deon Brisco testified that he and Donquelo Bailey were both members of a gang, the Traveling Vice Lords. In the evening of March 9, 1996, Brisco and Bailey were in Brisco's car when they encountered two girls. At the same time Brisco and Bailey encountered these two young women, they also encountered defendant and his friend Dan Manifee[1]. Once Brisco and Bailey exited their vehicle to speak to the two girls they had just seen, Bailey and defendant began arguing. While defendant and Bailey argued, Brisco told Bailey he was going to the store but would come back. As Brisco walked to the store he heard defendant tell Bailey that he would be back and then watched defendant walk away from Bailey. On his way back from the store, Brisco saw that defendant had returned with Manifee and had also resumed arguing with Bailey. As defendant and Bailey argued, a crowd of eight or nine people gathered around them. Bailey then struck Manifee. In response to Manifee being punched, defendant stepped back, drew his gun and opened fire, striking Bailey several times. Brisco also stated that, after he was shot the first time, he tried to flee the area but slipped and was shot again by defendant. According to Brisco, Derrick Rogers, who was also present, did not realize that he had actually been shot until after Rogers took Bailey and Brisco to the hospital.

Defendant testified that at the time of the incident he was a delivery man for Best Buy Furniture. Defendant explained that as a matter of course he carried a .25 automatic pistol because he had been the victim of both an armed robbery as well as a physical assault while working as a furniture delivery man. On March 9, 1996, defendant

---

[1]The spelling of "Manifee" is different throughout the proceedings. We will refer to the witness as "Manifee."

encountered Bailey at the mouth of an alley. Bailey and three of his friends were in a car while defendant was on foot. Bailey got out of the car and approached defendant and asked him why one of his friends had been selling fake narcotics on his corner. Defendant replied that he did not know the person Bailey was talking about. Bailey then returned to his car and left the mouth of the alley. Defendant then walked to a friend's house where he sat on the porch talking with several people. At this time, Derrick Rogers, who was on the street, called the defendant and motioned to him to come off the porch. Defendant had observed Rogers selling narcotics in his neighborhood and had heard that Rogers was "not to be reckoned with." Defendant had also observed Rogers with a gun on a prior occasion and knew that he was a member of the Traveling Vice Lords. Defendant testified that he had never seen Bailey with a weapon before but had seen him beat a person with a large stick.

Defendant explained that as he came down off the porch Rogers and several others formed a semi-circle around him. As this was occurring, defendant's friend Manifee approached and placed himself in between defendant and Bailey. Bailey struck Manifee and attempted to punch defendant. As Manifee was falling to the ground defendant drew his .25 automatic and said that he "just started shooting." Defendant denied that he ever shot anybody while they were on the ground.

Defendant first asserts that his armed violence conviction should not be subject to the sentencing enhancement provision of the armed violence statute and should be reversed. See 720 ILCS 5/33A—3 (West 1996). Specifically, defendant claims that because the trier of fact found a mitigated mental state with respect to the second degree murder conviction it necessarily found that defendant acted with the same mental state when he committed the aggravated battery offense. Additionally, defendant suggests that because our supreme court in *People v. Alejos*, 97 Ill. 2d 502, 455 N.E.2d 48 (1983), has previously held that the mitigated mental state of second degree murder is one that cannot be deterred by the offense of armed violence, he argues the armed violence conviction predicated on aggravated battery in this instance cannot stand.

We begin our analysis by observing that defendant's second degree murder conviction and armed violence conviction predicated on aggravated battery were separate acts committed upon separate victims. As we will explain, defendant is not entitled to have the mitigated mental state from his second degree murder conviction imputed to his armed violence conviction simply because they arose out of the same shooting spree.

The offense of armed violence was intended to deter individuals from carrying a dangerous weapon when committing a felony. *People v. Lombardi,* 184 Ill. 2d 462, 483, 705 N.E.2d 91 (1998); see *Alejos,* 97 Ill. 2d at 509 (noting that the "stiff punishment mandated by the armed-violence provision is intended not only to punish the criminal and protect society from him but also to deter his conduct—that of carrying the weapon while committing a felony"). Defendant is correct when he asserts that there are certain circumstances in which the deterrent effect the armed violence statute seeks to achieve is not met. For example, in *Alejos* the supreme court held that voluntary manslaughter could not be used as the predicate offense for a conviction of armed violence, since no deterrent value could be achieved through enhanced sentencing. *Alejos,* 97 Ill. 2d at 507 (holding it difficult to understand the deterrent effect of the offense of armed violence since those who commit voluntary manslaughter do so without any deliberation). Similarly in *People v. Fernetti,* 104 Ill. 2d 19, 470 N.E.2d 501 (1984), the court found the offense of involuntary manslaughter not subject to the sentencing enhancement of armed violence, since by its very nature involuntary manslaughter is unintentional. In *People v. Drakeford,* 139 Ill. 2d 206, 564 N.E.2d 792 (1990), the court held a defendant may not be sentenced for armed violence predicated on aggravated battery when that defendant had been convicted of second degree murder arising from the very same act. See *Drakeford,* 139 Ill. 2d at 213-14, stating:

> "In the case at bar, defendant was convicted of second degree murder. Thus, the jury found that defendant's conduct was unpremeditated, undeterrable, and caused by an actual but unreasonable belief that the circumstances required the use of deadly force in self-defense. As a result, even though defendant also committed aggravated battery causing great bodily harm, which is a proper predicate felony for armed violence, we will not permit the State to utilize the armed violence statute to enhance defendant's penalty for conduct constituting second degree murder." *Drakeford,* 139 Ill. 2d at 213-14.

The critical distinction between the instant case and those just discussed is that defendant's conviction for armed violence based upon the commission of an aggravated battery stems from the shooting of one victim and defendant's conviction for second degree murder stems from the separate shooting of another victim. Consequently, it is important to distinguish the offense of aggravated battery from second degree murder. In *People v. Eure,* 140 Ill. App. 3d 387, 395, 488 N.E.2d 1267 (1986), it was stated:

> "Unlike involuntary or voluntary manslaughter, aggravated bat-

tery contains a specific intent and lacks mitigating factors. [Citation.] Indeed, it is an enhanced, not a reduced offense. [Citation.] It cannot be said, therefore, that the use of a weapon in the commission of aggravated battery causing great bodily harm cannot be deterred. The decision to so use a weapon is not one forced on an accused, as in voluntary manslaughter/unreasonable belief in self-defense, nor is it a spontaneous decision, as in voluntary manslaughter/sudden and intense passion. It is an intent offense, unlike involuntary manslaughter. The use of a weapon in such a case can be deterred; the purposes of the armed violence statute may therefore be achieved by application of that offense to the predicate felony of aggravated battery." *Eure,* 140 Ill. App. 3d at 395.

As pointed out in *Eure,* the mental state required for second degree murder is different from the mental state required for the offense of aggravated battery. In *People v. Allen,* 153 Ill. 2d 145, 606 N.E.2d 1149 (1992), the supreme court made clear that the mental state incorporated into the offense of second degree murder was markedly different from that of aggravated battery. See *Allen,* 153 Ill. 2d at 152 (holding that "[a]ggravated battery, unlike either voluntary manslaughter or second degree murder, has no mitigating factors"). In fact, the determination of whether a defendant was either acting under a sudden or intense passion or possessed an actual, although unreasonable, belief in the need for self-defense is irrelevant for purposes of determining whether an aggravated battery has occurred. *Allen,* 153 Ill. 2d at 152.

With the foregoing distinctions in mind, we find that *People v. Floyd,* 262 Ill. App. 3d 49, 634 N.E.2d 328 (1994), is particularly instructive. In *Floyd,* the defendant shot and killed one victim and shot and wounded another. The defendant was convicted of second degree murder with respect to the deceased victim and armed violence predicated on aggravated battery with respect to the victim who survived. As in the instant case, the defendant in *Floyd* argued that because the trier of fact determined he acted under an unreasonable belief in the need to use force for self-defense, the trier of fact must have also believed that defendant acted under the same mitigated mental state when he committed aggravated battery. Therefore, according to the defendant, his mitigated mental state giving rise to his conduct was undeterrable and made the rationales from *Alejos* and *Drakeford* applicable to his armed violence conviction. *Floyd,* 262 Ill. App. 3d at 59-60.

In its analysis of this issue, the court in *Floyd* first noted that the convictions of second degree murder and armed violence stemmed from separate acts committed upon separate victims, making the hold-

ing from *Drakeford* inapplicable. *Floyd*, 262 Ill. App. 3d at 59. Thereafter, the court rejected the defendant's argument that the mitigating mental state which accompanied the second degree murder verdict should be imputed as the mental state for the aggravated battery offense. Citing to *Allen*, the *Floyd* court noted that the offense of aggravated battery only recognized the mental states of intent and knowledge and did not provide for any mitigating factors. Thus, the fact that the defendant was found to have a mitigated mental state with regard to his second degree murder conviction was irrelevant to the determination of whether he possessed the requisite intent to commit the offense of aggravated battery. *Floyd*, 262 Ill. App. 3d at 60; see *Allen*, 153 Ill. 2d at 152, stating:

> "The aggravated battery statute does not currently recognize any mental state other than the mental state of intent or knowledge. [Citation.] Whether the defendant's conduct is in fact the result of a mental state that, while intentional or knowing, is motivated by a sudden or intense passion or an actual but unreasonable belief in the need for self-defense is irrelevant for purposes of determining whether an aggravated battery has occurred." *Allen*, 153 Ill. 2d at 152.

Consistent with *Allen*, the court in *Floyd* held that the defendant's commission of second degree murder did not require imputing a similar mental state for the aggravated battery committed upon a separate victim even though both offenses were closely related. *Floyd*, 262 Ill. App. 3d at 59-60; see *Allen*, 153 Ill. 2d at 152-53 (whether the trial court should be required to consider a mitigated mental state prior to determining whether an aggravated battery has occurred is a function for legislature and not the supreme court). Therefore, the fact that the offenses of second degree murder and aggravated battery occurred close in time simply had no bearing upon one another since they were committed upon two different people. As a result, the defendant's conviction of armed violence was affirmed. *Floyd*, 262 Ill. App. 3d at 61.

■ As in *Floyd*, defendant in the instant case was convicted of both second degree murder and armed violence predicated on aggravated battery. Each of these offenses was committed upon different victims. Despite defendant's argument to the contrary, we see no reason why the reasoning of *Floyd* should not be followed. Thus, we conclude that defendant's second degree murder conviction does not require us to impute a mitigated mental state for the commission of an aggravated battery committed against a separate victim, although those shootings were closely related in time. See *Floyd*, 262 Ill. App. 3d at 59-60. Moreover, although the defendant claims the facts sup-

port a mitigated mental state for the nonfatal shooting of Brisco, we point out that Brisco was never armed, was not physically involved in the altercation, but was shot once by defendant in the pelvis and then was shot again in his lower right leg while he was on the ground. In light of the above, we adopt the reasoning of *Floyd* and reject defendant's contention that we reverse his conviction for armed violence.

■ Defendant's next two claims both concern Illinois's current sentencing scheme. Defendant alleges that the armed violence statute violates both the proportionate penalties clause and the single subject rule as it appears in Public Act 88—680. See 720 ILCS 5/33A—1, 33A—2, 33A—3 (West 1996). Public Act 88—680 amended section 33A—1 making the commission of armed violence with a category I weapon a Class X felony subject to a mandatory minimum prison term of 15 years. 720 ILCS 5/33A—3 (West 1996). Recently, however, our supreme court in *People v. Cervantes*, 189 Ill. 2d 80, 91, 723 N.E.2d 265 (1999), ruled that no matter how liberally construed, Public Act 88—680 violated the single subject clause of the Illinois Constitution. Ill. Const. 1970, art. IV, § 8. Since Public Act 88—680 was deemed unconstitutional, its provisions increasing the mandatory minimum sentence for armed violence to 15 years when committed with a category I weapon is invalid. Therefore, we remand this matter to the trial court so that it can resentence defendant in accordance with section 33A—3 as it existed prior to the enactment of Public Act 88—680. 720 ILCS 5/33A—3 (West 1992). Because we are remanding this matter to the trial court, we need not consider whether defendant's 15-year term of imprisonment violates the proportionate penalties clause of the Illinois Constitution.

Affirmed in part; reversed in part and remanded with instructions.

COUSINS and GORDON, JJ., concur.